# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE BONILLA,<br><br>             Plaintiff,<br><br>vs.<br><br>D. URIBE; K. BERKLER; T.L. ROSENKRANS; E. FISCHER; E. VARGAS; J. ESCOBEDO; A. MONARREZ;<br><br>             Defendants. | CASE NO. 11cv1274-GPC (WMc)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>(ECF No. 132) |

## I. INTRODUCTION

Plaintiff Jose Bonilla ("Bonilla"), a state prisoner proceeding *pro se* and *in forma pauperis*, has filed a civil rights action under 42 U.S.C. § 1983 alleging violations of due process and equal protection. (Pl.'s Third Am. Compl., ECF No. 129.) Defendants E. Fischer, E. Vargas, J. Escobedo, D. Uribe, Jr., K. Berlker, T. Roskenkrans, and A. Monarrez (collectively "Defendants") have filed a Motion to Dismiss, asserting the doctrines of res judicata, collateral estoppel, and the *Rooker-Feldman* bar the Third Amended Complaint, and Defendants are entitled to qualified immunity.

For the reasons set forth below, the Court **RECOMMENDS** Defendants'

Motion to Dismiss be **GRANTED** and Plaintiff's Third Amended Complaint be **DISMISSED** with prejudice.

## II.   BACKGROUND

*Bonilla's Alleged Facts*

While incarcerated at Centinela State Prison, Bonilla appeared before the Initial Classification Committee on December 4, 2007. (ECF No. 129 at 3.) When a committee member asked Bonilla if he was Mexican, Bonilla replied he was born in Mexico but was not a "Mexican" prison gang member. (Id.) The committee member told Bonilla he would be placed in administrative segregation for sympathizing with a prison gang or conducting illegal activity. (Id.)

On August 17, 2008, correctional officers searched the cells of Bonilla and other Hispanic inmates and confiscated Bonilla's personal property. (Id.) The officers also questioned Bonilla regarding his name, prison number, tattoos, birth place, and what age he came to the United States. The following day, an Institutional Gang Investigator investigated Bonilla's prison gang status and prepared a validation package. (Id. at 4.) Bonilla was then placed in administrative segregation. (Id.)

On August 26, 2008, Defendant Escobedo reviewed and submitted Bonilla's gang validation package and supporting evidence to Law Enforcement Intelligence Unit in Sacramento, California. (Id. at 4.) The validation package consisted of the following five items:

(1)   A CDC-128-B dated August 18, 2008, alleging Bonilla's association with the Southern Hispanic Soldiers based on a depiction of the Virgin Mary found in Bonilla's possession.

(2)   A Rule Violation Report DCD 115 issued to Bonilla for participation in a riot.

(3)   A CDC 128 dated August 18, 2008, indicating Bonilla had an address in his personal property that was an active and current mail drop for a

2

prison gang member.

(4) Confidential memorandum dated March 3, 2000

(5) Confidential memorandum dated March 20, 2001.

(ECF No 129 at 4-5.) Bonilla contends he did not sign the Virgin Mary depiction, and there is no evidence he communicated with the other gang member regarding the alleged mail drop.

On September 30, 2008, Defendants Berkler, Rosenkrans, and Fischer reviewed the validation package and determined the first three items met the validation requirements, but items four and five did not meet the requirements. (Id. at 5.)

On November 26, 2008, Bonilla appeared at a review before the Institutional Classification Committee held by Defendant Uribe. The Committee determined Bonilla would remain in administrative segregation pending the completion of the gang validation investigation. (Id. at 5.) Bonilla filed an 602 inmate appeal contesting his gang validation. (Id.)

On March 19, 2009, Bonilla was transferred from Centinela State Prison to California Correctional Institute's Security Housing Unit. (Id. at 5.)

*State Court Proceedings*

On July 9, 2009, Bonilla filed a petition for writ of habeas corpus in the Kern County Superior Court, Case No. HC011288A challenging his gang validation. (ECF No. 143, Ex. A.) In his petition, Bonilla alleged the validation package did not meet the minimally stringent "some evidence" standard because the items did not show gang activity. (Id. at 10.) Bonilla argued all three items constituted unreliable evidence and could not be used to support his gang validation. (Id. at 22-23.)

On August 20, 2009, the Kern Superior Court issued an order for informal response to Bonilla's Petition. (ECF No. 143, Ex. B, at 61–62.) The court found sufficient linkage with gang participation for item one, the picture card with the portrait of the Virgin Mary, and for item two, the address book containing the mail

drop. The court, however, required more information regarding item three, specifically how the participation in a riot is a source for gang validation, before ruling on the petition. (ECF No. 143 at 62.) The Attorney General's office filed an informal response, and Bonilla filed a reply. (See ECF No. 143, Ex. C; ECF No. 143 at 69.) Upon reviewing the submitted evidence, the court found Bonilla's participation in a race riot on February 23, 2000 was evidence of gang validation. The court explained Bonilla was one of numerous Southern Hispanics who participated in a riot as a reprisal for failure of African American inmates to discipline a fellow inmate; a video tape showed Bonilla as a participant; a correctional officer identified Bonilla as a participant; Bonilla was involved in past incidents of attacking African American inmates; and a cell search revealed a weapon manufactured by Bonilla. (ECF No. 143 at 68.) The court also noted the confidential sources relied upon for the item three rule violation were reliable. Accordingly, the court denied Bonilla's petition on November 12, 2009. (ECF No. 143, Ex. D.)

Bonilla filed a subsequent petition for Writ of Habeas Corpus in the California Court of Appeal in which Bonilla raised the same arguments as he did before the Kern County Superior Court. (See ECF No. 143, Ex. E.) On February 23, 2010, the Attorney General's office filed an informal response in the California Court of Appeal. (ECF No. 143, Ex. E, at 151–52.) The appellate court denied the petition. (ECF No. 143, Ex. G.) Bonilla then filed a petition with the California Supreme Court, which denied the petition en banc. (ECF No. 143, Ex. I.)

*Federal Court Proceedings*

On November 5, 2010, Bonilla filed a petition for writ of habeas corpus in the Eastern District of California pursuant to 28 U.S.C. § 2254, challenging the sufficiency of evidence regarding his gang validation and placement in administrative segregation. (ECF No. 141, Ex. A, at 4.) The court recommended dismissal, finding Bonilla was not entitled to habeas corpus relief. (Id. at 5.) Bonilla

4

filed timely objections to the Magistrate Judge's Findings and Recommendations. Upon reviewing Bonilla's petition *de novo*, the district court dismissed the petition and declined to issue a Certificate of Appealability. (ECF No. 141, Ex. B., at 9.)

*Instant Case*

On June 9, 2011, Plaintiff filed the original Complaint in the instant section 1983 case. (ECF No. 1.) On December 2, 2011, Defendants Uribe and Vargas filed a Motion to Dismiss the Complaint, and Plaintiff filed a First Amended Complaint. (ECF Nos. 26, 50.) Bonilla then filed a Second Amended Complaint on March 15, 2010. (ECF No. 82.) Defendants filed an Answer to the Second Amended Complaint on March 20, 2012. (ECF No. 84.)

Bonilla filed his Third Amended Complaint, the operative complaint, on January 10, 2013. (ECF No. 129.) Bonilla alleges Defendants Fischer, Rosenkrans, Berkler, Escobedo, Smelosky, and Uribe violated his right to due process by validating his gang affiliation and placing him in administrative segregation based on insufficient and unreliable evidence. (ECF No. 129 at 8-10.) Bonilla further alleges Defendant Monarrez violated his right to equal protection by using race as a factor for gang status in order to justify Bonilla's placement in administrative segregation. (ECF No. 129 at 11.)

On February 2, 2013, Defendants E. Fischer, E. Vargas, J. Escobedo, D. Uribe, K. Berkler, and T. Rosenkrans filed a Motion to Dismiss the Third Amended Complaint. (ECF No. 132.) Defendant A. Monarrez filed a Notice of Joinder to Defendants' Motion to Dismiss. (ECF No. 134.) Defendants assert the Court should dismiss the Third Amended Complaint based on the doctrines of res judicata, collateral estoppel, and *Rooker–Feldman*. Defendants also assert they are entitled to qualified immunity.

**III. REQUEST FOR JUDICIAL NOTICE**

Both parties have filed a Request for Judicial Notice pursuant to Federal Rule of Evidence 201. (ECF Nos. 141, 143.) Bonilla asks the Court to take judicial notice

of two court orders issued by the District Court for the Eastern District of California in *Bonilla v. Gonzalez*, 10cv2056-AWI-DLB (HC). Defendants ask the Court to take judicial notice of Bonilla's petition for writ of habeas corpus, court orders, and other filings filed in *In re: Jose Bonilla* (Kern County Superior Court, Case No. HC011228A); *In re: Jose Bonilla* (California Court of Appeals, Case No F059061); and *In re Jose Bonilla* (California Supreme Court, Case No. S184722). Neither party opposes the other party's request for judicial notice.

A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this rule, courts may take judicial notice of papers filed in other courts as well as orders issued by other courts. *See Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998); *Porter v. Ollison*, 620 F.3d 952, 955 n.1 (9th Cir. 2010). Both parties ask the Court to take judicial notice of either court orders or papers filed in other courts. Neither party disputes the authenticly of the documents. Accordingly, the Court takes judicial notice of the proffered documents.

**IV.    DISCUSSION**

**LEGAL STANDARD**

*Motion to Dismiss*

In reviewing a motion to dismiss, the court's review is limited to the face of the operative complaint, documents referenced in the complaint, and matters which the court may take judicial notice. *Hott v. City of San Jose*, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000). When ruling on a motion to dismiss, the court construes all facts in favor of the plaintiff. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983).

*Standards Applicable to Pro Se Litigants*

Where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.

*Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Board. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation and citation omitted). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. Where amendment of a *pro se* litigant's complaint would be futile, however, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### *Res Judicata*

The related doctrines of res judicata and collateral estoppel limit litigants' ability to relitigate matters. *Montana v. United States*, 440 U.S. 147, 153 (1979). Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). Res judicata bars all claims actually raised in the initial litigation as well as any additional ground for recovery that could have been raised in the initial litigation. *Montana*, 440 U.S. at 153; *Gonzales v. California Dept. of Corrs.*, 782 F. Supp. 2d 834, 838 (2011). As a result, a "plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory." *Id.* The purpose of these precluding doctrines is to protect against vexatious litigants, to conserve judicial resources, and to minimize the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153–54.

Federal courts must give a state court judgment the same preclusive effect as the state court judgment would receive by another court of that state. *See* 28 U.S.C. § 1738; *Maldonado v. Harris,* 370 F.3d 945, 951 (9th Cir. 2004). To determine the preclusive effect of the state court judgment, the court must look to state law. *Id.* In California, courts apply the "primary rights theory" in which a "cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009); *Gonzales*, 782 F. Supp. 2d at 838. Therefore, if two actions involve the same wrong by the defendant and the same injury to the plaintiff, then the same primary right is at stake regardless of whether plaintiff seeks different relief or pleads different legal theories. *Brodheim*, 584 F.3d at 1268.

For res judicata to preclude a cause of action, the party against whom the judgement is asserted must have had a "full and fair opportunity" to litigate the claim in the earlier case. *Allen*, 449 U.S. at 95; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480–81 (1982). For a federal court to give full faith and credit to a state court judgment under section 1738, the state proceeding must satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *Kremer*, 456 U.S. at 481. In the context of a prisoner's gang validation, due process requires that "some evidence" support the decision to validate a prisoner's gang affiliation. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

The Ninth Circuit has applied the doctrine of res judicata to similar circumstances to the case at hand. "[B]ecause of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards." *Silverton v. Dept. of the Treasury,* 644 F.2d 1341, 1347 (9th Cir. 1981);

*see also Clement v. California Dept. of Corrs.*, 220 F. Supp. 2d 1098, 1108 (2002); *Gonzales*, 782 F. Supp. 2d at 839.

The case at hand is almost identical to *Gonzales v. California Dept. of Corrections*, 782 F. Supp. 2d 834 (2011). There, the state prisoner plaintiff filed a section 1983 civil rights action, alleging his placement in administrative segregation was based on insufficient and unreliable evidence. *Id.* at 839. The district court held res judicata precluded the section 1983 action because the plaintiff sought to relitigate the same cause of action in federal court as he had already litigated in state court through his petition for habeas corpus. *Id.* The district court noted res judicata applied, even though the defendants were not identical in both the state and federal actions, because plaintiff had an opportunity for full and fair litigation of his claims, as required by the Due Process Clause. *Id.*

Here, Bonilla's section 1983 complaint alleges, almost verbatim, the same cause of action he pursued in state court. *First,* the primary right possessed by Bonilla was his protected liberty interest in being free from confinement in administrative segregation. *Second,* the corresponding primary duty devolving upon Defendants, as prison officials, was to refrain from placing Bonilla in administrative segregation without affording him established procedural protections, specifically requiring some reliable evidence to support a gang validation. *Finally*, the alleged harm was Defendants' decision to validate Bonilla's gang affiliation based on allegedly unreliable evidence. In both state and federal actions, Bonilla alleges the same violation of procedural protection – use of allegedly insufficient or unreliable evidence – and the same injury– wrongful placement in administrative segregation based on a deficient gang validation. Under California law, Bonilla's cause of action in federal court is the same as his cause of action in state court. *See Brodheim*, 584 F.3d at 1268; *Gonzales*, 782 F. Supp. 2d at 839.

Bonilla also had a full and fair opportunity to litigate his due process claim. Bonilla filed his petition in Kern County Superior Court, alleging specific details as

9

to why each of three sources used to validate his gang affiliation was unreliable. Bonilla also referenced the "some evidence" standard within his petition. The superior court issued an informal response, finding two sources – the Virgin Mary depiction with a message card and a mail drop correspondence – were usable sources. The superior court, however, required more information about the third source – Bonilla's alleged participation in a race riot – from the Department of Corrections before ruling on Bonilla's petition. In response, the attorney filed an informal response and Bonilla filed a reply. After considering the parties' further briefing on the third item used to validate Bonilla's gang affiliation, the superior court denied Bonilla's petition, finding three independent sources were used to validate Bonilla's gang affiliation. The court's finding that three independent sources validated Bonilla's gang affiliation satisfied the "some evidence" standard required for federal due process. *See Bruce*, 351 F.3d at 1288 (noting one item of evidence can be sufficient to support a gang validation).

Bonilla has alleged the same due process cause of action in federal court as he already litigated in state court. Bonilla had a full and fair opportunity to litigate his claim that unreliable evidence was used to validate his placement in administrative segregation. The state court's adjudication of Bonilla's petition was final and on the merits. Accordingly, res judicata bars Bonilla's instant section 1983 action in federal court. Moreover, because res judicata also precludes any claims that could have been litigated in the first action, Bonilla is barred from raising new legal theories stemming from the same "cause of action." *See Brodheim*, 584 F.3d at 1268. Therefore, Bonilla's equal protection claim is also barred by res judicata. *See Gonzales*, 782 F. Supp. 2d at 841.

The Court **RECOMMENDS** Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint based on res judicata be **GRANTED**.

///

///

*Collateral Estoppel*

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94. Collateral estoppel applies in section 1983 actions to preclude the relitigation of issues previously decided in a state action. *Lato v. Sieverman*, 919 F. Supp. 336, 338 (C.D. Cal. 1996) (internal citations omitted).

State law determines whether a prior state court judgment is given preclusive effect based on collateral estoppel. *Ayers v. City of Richmond,* 895 F.2d 1267, 1271 (9th Cir. 1990). Under California law, collateral estoppel applies only where the court determines: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Additionally, for collateral estoppel to bar an issue, federal courts require the party against whom estoppel is asserted had a full and fail opportunity to litigate the issue based on federal standards. *Silverton,* 644 F.2d at 1347.

Collateral estoppel applies to bar the religitation of the issue of whether Bonilla received due process regarding the evidence used to validate his gang affiliation. *First*, Bonilla raised the identical issue – the reliability of each item of evidence relied upon for his gang validation – before the state court. The state court necessarily decided the exact issue by finding three items supported the validation. *Second*, the state proceeding was a final judgment on the merits because the Kern County Court as well as the Court of Appeal and the Supreme Court of California denied Bonilla's petitions. *Third*, Bonilla was a party in the state proceedings. Bonilla also had a full and fair opportunity to litigate under federal standards, as

explained above. Accordingly, collateral estoppel bars the relitigation of the issue of whether the evidence used to validate Bonilla's gang affiliation was insufficient or unreliable.

The Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint based on collateral estoppel be **GRANTED**.

*Rooker-Feldman Doctrine[1]*

In addition to res judicata and collateral estoppel, Defendants also claim the *Rooker–Feldman* doctrine deprives this court of jurisdiction over Bonilla's claims because his claims are "inextricably intertwined" with the claims he adjudicated in state court. For Bonilla to succeed in this action, Defendants claim, this Court must overrule and void the state court rulings in violation the *Rooker–Feldman* doctrine.

"[T]he basic premise of *Rooker–Feldman* is that a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Maldonado*, 370 F.3d at 949 (internal citation and quotation marks omitted). To clarify the doctrine's scope, the Ninth Circuit explained:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction.

*Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003). Additionally, for the doctrine to apply, the Ninth Circuit requires a federal plaintiff to allege a legal error by the state court as the basis for that relief. *Maldando*, 370 F.3d at 950 (citing *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140 (9th Cir. 2004)). In *Maldando*, the Ninth Circuit held *Rooker–Feldman* did not apply because the plaintiff did not allege any legal errors by the California state court as a basis for relief. *Id.* at 950–51.

Here, Bonilla claims Defendants violated his rights to due process and equal

---

[1] *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

12

protection. Thus, Bonilla asserts an alleged legal wrong by an adverse party. *See Noel*, 341 F.3d at 1164. Moreover, Bonilla does not allege any legal errors by the California state courts. Therefore, the *Rooker-Feldman* doctrine does not apply. *See Maldando*, 370 F.3d at 950–51.

The Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint based on the *Rooker-Feldman* doctrine be **DENIED**.

*Qualified Immunity*

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez,* 267 F.3d 895, 910 (9th Cir.2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Supreme Court has recognized qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The doctrine of qualified immunity requires a two-prong analysis. *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). First, the court must determine whether the facts alleged, taken in the light most favorable to the Plaintiff, demonstrate the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see also Hayes v. Dovey*, 914 F. Supp. 2d 1125, at *17 (S.D. Cal. 2012). Second, the court must determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.*

District courts may exercise discretion in deciding which of the two prongs to address first in light of the particular facts of the case. *Pearson*, 555 U.S. at 236 (explaining "while the sequence set forth is often appropriate, it should no longer be regarded as mandatory"). If the court determines the plaintiff has not alleged a constitutional violation, "there is no necessity for further inquiries concerning

13

qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the court determines the right at issue was not "clearly established" at the time of the alleged violation, the court may end its qualified immunity inquiry without determining whether the plaintiff has alleged a constitutional or statutory violation. *Pearson*, 555 U.S. at 236.

A right is "clearly established" when "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This standard, however, does not require the alleged conduct to have been previously held unlawful, but instead "clearly established" requires the unlawfulness be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). When determining whether a right is "clearly established," the "salient question" is whether the state of the law at the time gives the defendant "fair warning" that his conduct is unconstitutional. *Hope*, 536 U.S. at 740. The court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 202. The "clearly established" standard serves to protect the balance between "the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). Qualified immunity is an affirmative defense, and therefore the burden of proof lies with the party asserting it. *Harlow,* 457 U.S. at 812.

*Due Process Claim*

Bonilla alleged Defendants Fischer, Rosenkrans, Berkler, and Escobedo violated his right to due process by either approving, transporting, or authorizing a gang validation package based on unreliable evidence, which resulted in his administrative segregation placement. Bonilla further contends Defendants Smelosky and Uribe violated his due process right by imposing an indeterminate term in administrative segregation without any evidence with the indicia of reliability.

14

First, the court must determine whether the facts alleged, taken in the light most favorable to Bonilla, demonstrate Defendants violated Bonilla's right to due process. *See Saucier*, 533 U.S. at 201. In the context of a prisoner's gang validation, due process requires that "some evidence" support the decision to validate a prisoner's gang affiliation. *Bruce*, 351 F.3d at 1287 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). Under this "minimally stringent" standard, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. *Madrid v. Gomez,* 889 F. Supp. 1146, 1273 (N.D. Cal. 1995).

Even considering the alleged facts in light most favorable to the plaintiff, Bonilla fails to allege a due process violation. Bonilla notes the validation package consisted of three items: (1) a depiction of the Virgin Mary; (2) a rule violation report charging Bonilla with participation in a riot; and (3) the address of an active and current mail drop for a prison gang member. Bonilla, however, asserts he did not sign the Virgin Mary depiction and there was no evidence he communicated with the other gang member through the mail drop. Even considering the alleged deficiencies, there is still some evidence that could support the validation. For example, Bonilla does not allege he was not in possession of the Virgin Mary depiction or the mail drop address, or that he did not participate in the riot. These items, whether considered independently or collectively, provide some evidence to support Bonilla's gang affiliation. *See Bruce*, 351 F.3d at 1288 (recognizing one item may satisfy the some evidence standard to support a gang validation). Accordingly, Bonilla has not sufficiently alleged a constitutional violation.

Second, the Court must determine whether the right at issue was "clearly established" at the time of Defendant's alleged due process violation. *See Saucier*, 533 U.S. at 201. Case law makes clear that Defendants, as prison officials, require "some evidence" to support a prisoner's gang validation. *See Hill*, 472 U.S. at 455; *Bruce*, 351 F.3d at 1287–88. Bonilla's right to due process regarding a gang

validation and resulting placement in administrative segregation was clearly established.

Nevertheless, because Bonilla has not alleged a due process violation, the Court **RECOMMENDS** Defendants' motion to dismiss based on qualified immunity as to the due process claim be **GRANTED**.

*Equal Protection Claim*

Bonilla has alleged Defendant Monarrez violated his right to equal protection by questioning Bonilla about race in an effort to determine whether Bonilla had gang affiliations. Bonilla claims Defendant Monarrez asked if Bonilla was Mexican. Bonilla responded that although he was born in Mexico, he was not a "Mexican" gang member. Bonilla then alleges Defendant Monarrez warned if Bonilla was affiliated with a prison gang or conducting illicit activity, he would be sent to administrative segregation.

Under the Equal Protection Clause of the Fourteenth Amendement, all persons similarly situation should be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal citations omitted). Equal protection claims trigger strict scrutiny when they involve a suspect class such as race or national origin. *Cleburne,* 473 U.S. at 440.

First, the court must determine whether the facts alleged, taken in the light most favorable to Bonilla, demonstrate Defendant Monarrez violated Bonilla's right to equal protection. *See Saucier*, 533 U.S. at 201. Bonilla alleges he is Mexican by birth and not affiliated with a prison gang. Bonilla also alleges Defendant Monarrez threatened that if Bonilla associated with a gang or conducted illegal activity, Defendant Monarrez would place him in administrative segregation. Bonilla claims

Defendant Monarrez attempted to have Bonilla admit membership in a prison gang by admitting he was Mexican without the qualification of being Mexican by birth. Based on Bonilla's own allegations, Defendant Monarrez's *purpose* in questioning him and threatening placement in administrative segregation was to determine whether Bonilla had gang affiliations, not to discriminate against Bonilla because of his race. Although Defendant Monarrez asked if Bonilla was Mexican, Bonilla does not allege any additional facts to show Defendant Monarrez had the purpose of discriminating against Monarrez *because* he was Mexican. Accordingly, Bonilla does allege sufficient facts to state a claim for an equal protection violation.

Second, the Court must determine whether the right at issue was "clearly established" at the time of Defendant's alleged due process violation. *See Saucier*, 533 U.S. at 201. A prisoner's right to equal protection of the law is clearly established. *See Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race").

Because Bonilla has not stated a claim for an equal protection violation, the Court **RECOMMENDS** Defendant's Motion to Dismiss based on qualified immunity regarding his equal protection claim be **GRANTED**.

## V. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED**: Plaintiff's Third Amended Complaint be **DISMISSED with prejudice** under the doctrine of res judicata and collateral estoppel. Specifically, it is recommended that Defendants' motion to dismiss be granted as to res judicata, collateral estoppel, and qualified immunity, and denied as to the *Rooker–Feldman* doctrine. Because the Court recommends granting Defendants' motion based on res judicata and collateral estoppel as to all claims

17

raised in the Third Amended Complaint, the Court recommends dismissal with prejudice.

**IT IS HEREBY ORDERED** no later than **August 23, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **August 30, 2013**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**DATED:** August 8, 2013

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court